IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| FARADAY CAPITAL LIMITED FOR AND ON BEHALF OF SYNDICATE 435 §§§§§ *Plaintiff* §§ v. §§ HABITATIONAL OWNERS GROUP, INC., THE WINROCK, LTD., AND SUMAR ENTERPRISES, INC. §§§§§ *Defendants* § | CASE NO.: _____ JURY DEMANDED |

## ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW Plaintiff Faraday Capital Limited for and on behalf of Syndicate 435 ("Faraday"), the designated Lead for Certain Underwriters at Lloyd's, London subscribing to Policy No. NGW41820014 ("Underwriters") and files its Original Complaint for Declaratory Judgment against Defendants Habitational Owners Group, Inc. ("Habitational"), The Winrock, Ltd. ("Winrock") and Sumar Enterprises, Inc. ("Sumar") and respectfully show the Court as follows:

## I.
## PARTIES

1.   Faraday Capital Limited for and on behalf of Syndicate 435 is a foreign company, a citizen of the United Kingdom, having its principal place of business at The Corn Exchange, 5th Floor, 55 Mark Lane, London EC3R 7NE.  Faraday does not have any Names residing in or who are citizens of Texas.

2. Habitational Owners Group, Inc. is a corporation organized and existing under the laws of the State of Texas, with its principal place of business in Texas, who may be served with process by serving its Registered Agent for service, Business Filings Incorporated, 701 Brazos Street, Suite 720, Austin, Texas 78701.

3. Sumar Enterprises, Inc. is a corporation organized and existing under the laws of the State of Texas, with its principal place of business in Texas, who may be served with process by serving its Registered Agent for service, Lawrence Hill, 17207 Kuykendahl Road, Suite 290, Spring, Texas 77379.

4. The Winrock, Ltd., d/b/a The Winrock Apartments, is a limited partnership organized and existing under the laws of the State of Texas, with its principal place of business in Texas, who may be served with process by serving its Registered Agent for service, PM-Winrock, Inc., 4543 Post Oak Place, Suite 231, Houston, Texas 77027.

## II.
## JURISDICTION AND VENUE

5. This court has subject matter jurisdiction over this lawsuit pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

6. In addition, this court has jurisdiction over this lawsuit under 28 U.S.C. §1332(a)(1) because Plaintiffs and Defendants are citizens of different states and the amount in controversy exceeds $75,000.00, excluding interest and costs.

7. Venue is proper in this Court under 28 U.S.C. §1391(a)(2) because a substantial part of the events giving rise to Defendants' insurance claim occurred within this District and within this Division. More specifically, this is an insurance coverage action concerning a policy issued in Texas, which provides coverage for a property located at 2100 Winrock Blvd., Houston, Harris County, Texas.

8. Further, venue is also appropriate in this Court under 28 U.S.C. §1391(a)(3) because Defendant has, at all material times, conducted business in the State of Texas.

## III.
## FACTUAL BACKGROUND

9. This is an action for declaratory judgment to determine Underwriters' rights and obligations under an insurance policy issued to Habitational. Underwriters issued Policy No. NGW41820014 to named insured Habitational for the period from December 22, 2014 to December 22, 2015 (the "Policy"). The Policy provides coverage for damage to, among others, an apartment building property located at 2100 Winrock Blvd., Houston, TX 77057 (the "Property"). Sumar Enterprises, Inc. is identified on the A true and correct copy of the Policy is attached hereto as Exhibit A and incorporated herein by reference.

10. Defendants filed a claim under the Policy for damages to the Property caused by "unusual settling" which allegedly occurred on June 26, 2015 (the "Claim"). Underwriters assigned the claim investigation to York Risk Services Group, Inc. After inspecting the Property and conducting an examination under oath of Winrock employee and property manager Teresa Fuller, Underwriters concluded that any property damage that may have occurred was due to normal settling which began to occur prior to the inception date of the Policy—an excluded cause of loss—and denied coverage for the Claim.

## IV.
## DECLARATORY RELIEF SOUGHT

11. Underwriters re-allege and incorporates by reference all preceding paragraphs.

12. An actual controversy of a justiciable nature presently exists between Underwriters and the Defendants concerning the rights and obligations of the parties to the Policy with respect to the alleged June 26, 2015 loss.

13. Underwriters seek a judicial determination that there is no coverage for the alleged loss because the damage is not a covered occurrence under the Policy as the cause of loss is excluded from coverage. Specifically, the Policy states:

The Policy states that it "does not insure against:

1. Wear, tear or gradual deterioration; wet rot or dry rot; spoilage, decay or decomposition, normal settling, shrinking or expansion in buildings, structures or foundations; corrosion or rust; erosion; leakage; any other gradually occurring loss; or any loss which commenced prior to the inception of this Policy;

2. Loss or damage caused by error in design, faulty workmanship; or faulty or unsuitable materials. However, if fire or explosion results, then any direct physical loss or damage arising directly from that fire or explosion shall not be excluded hereunder;

3. Loss or damage caused by moths, termites, or other insects, vermin, inherent vice or latent defect; dampness or dryness of atmosphere; condensation; smog or fog; or extremes or changes in atmospheric temperature. However, if a cause not otherwise excluded by this Policy results, then any direct physical loss or damage arising directly from that cause shall not be excluded hereunder;

9. loss, damage, claim, cost, expense or other sum directly or indirectly arising out of or resulting to:

   mold, mildew, fungus, spores or other microorganism of any type, nature, or description, including but not limited to any substance whose presence poses an actual or potential threat to human health.

   This exclusion applies regardless whether there is (i) any physical loss or damage to insured property; (ii) any insured peril or cause, whether or not contributing concurrently or in any sequence; (iii) any loss of use, occupancy, or functionality; or (iv) any action required, including but not limited to repair, replacement, removal, cleanup, abatement, disposal, relocation, or steps taken to address medical or legal concerns.

10. loss or damage caused by backing up of sewers and/or drains; or seepage of any substance;

\* \* \*

**EXCLUDED PROPERTY**

This Policy does not insure:

1. land, water or any other substance in or on land; except this exclusion does not apply to:

   a) land improvements consisting of landscape gardening, roadways and pavements, but not including any fill or land beneath such property.

   b) water that is contained within any enclosed tank, piping system or any other processing equipment;

2. shafts, mines, tunnels, wells, ponds, dams, dikes, wharves, piers, jetties, embankments, bulkheads, earthen structures and the like, and any man made property in or under the ground;

3. power transmission distribution or feeder lines beyond one statute mile of the insured location;

\* \* \*

**Section 8**

**CONDITIONS**

1. **Due Diligence**

   The Insured shall use due diligence and do and concur in doing all things reasonable to avoid or diminish any loss of or damage to the Property Insured.

\* \* \*

6. **Notification of Claims and Proof of Loss**

   The Insured, upon knowledge of any occurrence likely to give rise to a claim hereunder, shall give immediate written advice thereof to the person(s) or firm named for the purpose in Section II – Risk Details.

   The Insured shall render a signed and sworn proof of loss within sixty (60) days after the occurrence of a loss (unless such period be extended by the written agreement of the Insurers) stating the time, place and cause of loss, the interest of the Insured and of all others in the property, the sound value thereof and the amount of loss or damage thereto.

\* \* \*

**Section 9**

**DEFINITIONS**

1. **Occurrence**

The words "Occurrence" shall mean all individual losses or damage arising out of and directly occasioned by one event. However, if the following causes are insured by this Policy the duration and extent of any "Occurrence" so defined shall be limited to:

    a)      72 consecutive hours as regards a named storm, hurricane, a typhoon, windstorm, rainstorm, hailstorm and/or tornado;

    b)      72 consecutive hours as regards Earth Movement;

    c)      72 consecutive hours and within the limits of one city, town or village as regards riots, civil commotions and malicious damage;

    d)      72 consecutive hours as regards any "Occurrence" which includes individual loss or losses from any of the causes mentioned in a), b), and c) above;

The Insured may choose the date and time when any such period of consecutive hours commences and if any event is of greater duration than the above period, the Insured may divide that event into two or more "Occurrences" provided no two periods overlap and

provided no period commences earlier than the date and time of the happening of the first recorded individual loss to the Insured in that event during the Policy Term.

\* \* \*

3. **Earth Movement**

Earth Movement whenever used in this Policy shall mean any natural or man-made earth movement including, but not limited to earthquake, seaquake, volcanic eruption, landslide or subsidence and any ensuing tsunami and/or Flood when associated with an Earth Movement, regardless of any other cause or event contributing concurrently or in any other sequence of loss. However, physical damage by fire, explosion, or

sprinkler leakage resulting from Earth Movement will not be considered to be loss by Earth Movement within the terms and conditions of this Policy.

\* \* \*

**ENDORSEMENT NO. 36**

It is hereby understood and agreed that the following Clause is added hereon:

**DEDUCTIBLE DROP DOWN AND REIMBURSEMENT**

Notwithstanding anything contained hereon to the contrary, it is hereby understood noted and agreed that the Insurers will pay losses excess of $25,000 per occurrence and not $100,000 being the deductible stated and contained herein this provision excludes any losses caused by and/or arising out of the perils of Flood, Earthquake and Named Storm.  When the Insurers are required to make payment(s) in accordance with the above with respect to an insured loss, it is understood and agreed that the Insured shall agree to reimburse and indemnify the Insurers simultaneously never to exceed 30 days upon payment by the Insurers.

## V.
## PRAYER

WHEREFORE, Plaintiff Faraday Capital Limited for and on behalf of Syndicate 435, the designated Lead for Certain Underwriters at Lloyd's, London subscribing to Policy No. NGW41820014, prays that the Court declare that Plaintiff has no obligation to indemnify Defendants for the alleged June 26, 2015 loss, and grant such other and further relief to which Plaintiff may justly be entitled.

Respectfully submitted,

THOMPSON, COE, COUSINS & IRONS, L.L.P.

By: */s/  D. Christene Wood*
D. Christene Wood
Texas State Bar No. 24042188
Southern District I.D. No. 38044
E-Mail: cwood@thompsoncoe.com
One Riverway, Suite 1400
Houston, Texas   77056-1988
Telephone:  (713) 403-8210
Facsimile:  (713) 403-8299

**COUNSEL FOR PLAINTIFF**